**United States District Court**
For the Northern District of California

1

2

3

4

5               UNITED STATES DISTRICT COURT

6              NORTHERN DISTRICT OF CALIFORNIA

7

8   MICHELE ANDRADE,               No. C-15-1394 EMC

9         Plaintiff,

10     v.                    **ORDER GRANTING DEFENDANT'S**
**MOTION TO DISMISS**

11   DESERT CHAMPIONS LLC,       **(Docket No. 14)**

12         Defendant.

13   _____/

14

15                 **I.**   **INTRODUCTION**

16       On March 26, 2015, Plaintiff Michele Andrade filed a complaint alleging that Defendant

17   Desert Champions LLC violated a provision of the Fair Credit Reporting Act ("FACTA") by

18   providing her with a receipt that did not properly truncate her credit card information. *See* Docket

19   No. 1 ("Compl."). Pursuant to Rule 23(a), Plaintiff is bringing suit on behalf of herself and a class

20   similarly situated consumers who received such receipts from Defendant in violation of FACTA.

21   *See Id.* Pending before the Court is Defendant's motion to dismiss Plaintiff's complaint. Docket

22   No. 14.

23                **II.**   **BACKGROUND**

24       Desert Champions LLC ("Defendant") is a California company that operates a tennis

25   tournament called the BNP Paribas Open ("the Open"). Compl. ¶ 5. Defendant sells tickets to the

26   Open online. *See* Compl. ¶ 9. On November 6, 2014, Michele Andrade ("Plaintiff") purchased

27   tickets from Defendant's online store, using her Visa credit card. *Id.* Defendant mailed Plaintiff her

28   tickets and her receipt. *Id.* That receipt provided (1) the first digit of her Visa credit card number;

**United States District Court**
For the Northern District of California

1   and (2) the expiration date of her Visa credit card.  *Id.*  Plaintiff alleges that since at least 2013,

2   consumers that purchased items from Defendant using a credit or debit card have received receipts –

3   like the one she received – containing both the expiration date and the first digit of the card number

4   on the card used.  Compl. ¶ 10.  According to Plaintiff, Defendant's failure to properly truncate the

5   information on its receipts was a willful violation of FACTA, entitling Plaintiff and the class of

6   consumers she represents to statutory and punitive damages.  Compl. at p. 8.  Plaintiff does not

7   allege any actual damages resulting from Defendant's conduct.  *Id*.

## III.   DISCUSSION

### A.   Legal Standard

10      Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the

11   failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A motion to

12   dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged.  *See Parks*

13   *Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering such a motion, a court

14   must take all allegations of material fact as true and construe them in the light most favorable to the

15   nonmoving party, although "conclusory allegations of law and unwarranted inferences are

16   insufficient to avoid a Rule 12(b)(6) dismissal."  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir.

17   2009).  While "a complaint need not contain detailed factual allegations . . . it must plead 'enough

18   facts to state a claim to relief that is plausible on its face.'"  *Id.*  "A claim has facial plausibility when

19   the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

20   defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see*

21   *also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "The plausibility standard is not akin to

22   a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted

23   unlawfully."  *Iqbal*, 129 S. Ct. at 1949.

### B.   15 U.S.C. § 1681c(g)

25      FACTA prohibits any person that accepts credit or debit cards from printing more than the

26   last five (5) digits of the card number on the receipts its provides to the cardholder.  That provision

27   of FACTA, § 1681c(g), provides as follows:

28

**United States District Court**
For the Northern District of California

(1)     In general

Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date ***upon any receipt provided to the cardholder at the point of the sale or transaction***.

(2)     Limitation

This subsection shall apply only to receipts that are electronically printed, and shall not apply to transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card.

(3)     Effective date

This subsection shall become effective –

(A) 3 years after December 4, 2003, with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is in use before January 1, 2005; and

(B) 1 year after December 4, 2003, with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is first put into use on or after January 1, 2005.

15 U.S.C. § 1681c(g)(emphasis added).

Defendant argues that this statute only regulates receipts that are provided to consumers during face-to-face interactions in brick and mortar stores.  Specifically, Defendant argues that the plain language of the statute covers only those receipts "provided to the cardholder at the point of the sale or transaction."  *Id.*  According to Defendant, "the point of the sale or transaction" should be construed as referring to the place where the purchase is made, thus excluding receipts provided outside of the store – such as receipts provided by mail.  In support of this argument, Defendant relies heavily upon *Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1205 (9th Cir. 2011).

In *Simonoff*, the Ninth Circuit addressed the question of whether emailed receipts fell within the ambit of § 1681c(g).  643 F.3d at 1204.  The *Simonoff* court determined that emailed receipts did not fall within the purview of § 1681c(g) because (1) the statute limits itself to receipts that are "electronically printed;" and (2) emails are not "electronically printed" within the meaning of §

United States District Court
For the Northern District of California

1  1681c(g)(2).  *Id*. at 1208.  In reaching the conclusion that emails are not "electronically printed," the

2  court relied on the "the plain meaning of 'print' and 'electronically printed' and their context in the

3  statute." *Id*. at 1207.  In support of its more "tangible" – *i.e.* non-email-based – construction of the

4  term "printed," the court referred to the Seventh Circuit's construction of the § 1681c(g)(1) phrase

5  "point of the sale or transaction," stating:

6  > 'Point of sale' is a term of art that ***applies to face-to-face transactions***
   > ***that take place in a 'bricks-and-mortar' store or some comparable***
7  > ***physical location at which the consumer is handed a receipt***.
   > FACTA's use of this phrase, along with the other phrases already
8  > referenced, furnishes additional evidence that a 'printed' receipt is one
   > given to the customer in a tangible form.

9

10  *Id*. at 1210 (quoting *Shlahtichman v. 1–800 Contacts, Inc.*, 615 F.3d 794, 802 (7th Cir.2010)

11  (quotation marks and citations omitted) (emphasis added).

12  According to Defendant, the *Simonoff* interpretation of "point of sale" limits § 1681c(g)(1)

13  to receipts that are "handed" to the customer in a "face-to-face transaction."  Thus, under

14  Defendant's reasoning, Plaintiff's § 1681c(g)(1) claim fails as a matter of law because the claim

15  herein is predicated on Andrade's alleged online purchase, wherein the receipt was not "handed" to

16  the Plaintiff at the point of the sale, but mailed.  Furthermore, Defendant argues that because

17  Andrade's allegations do not support a claim under FACTA, Plaintiff does not have standing to

18  bring claims on behalf of those that allegedly made box-office purchases.

19  In response, Plaintiff argues that *Simonoff* only requires that a non-compliant receipt be

20  physically printed, not physically handed over, to trigger liability under FACTA.  In essence,

21  Plaintiff argues that *Simonoff*'s construction of "receipt provided to the cardholder at the point of the

22  sale or transaction" is not controlling, and that this Court should construe that phrase as including

23  printed receipts provided by mail.

24  As a threshold matter, Plaintiff is correct that the *Simonoff* court's construction of "point of

25  the sale or transaction" is not controlling because it is judicial dictum.[1]  *United States v. Johnson*,

27  [1] *Cf. Dragor Shipping Corp. v. Union Tank Car Co.*, 371 F.2d 722, 726 (9th Cir. 1967)
28  ("Where an appellate court decision rests on two or more grounds, none can be relegated to the category of *obiter dictum*.").

4

United States District Court

For the Northern District of California

1    256 F.3d 895, 921 (9th Cir. 2001).  It was not necessary to the Ninth Circuit's decision which

2    resolved only the question of whether the receipt needed to be printed.  This leaves open for this

3    Court the construction of the term "point of the sale or transaction."  *Johnson*, 256 F.3d at 921.

4    Nonetheless, the Court finds the Ninth Circuit's construction of that term persuasive and adheres to

5    it.

6         "To determine the meaning of a term in a federal regulation, we look to the common

7    meaning of the word."  *Cleveland v. City of L.A.*, 420 F.3d 981, 989 (9th Cir.2005).  "When a statute

8    does not define a term, a court should construe that term in accordance with its ordinary,

9    contemporary, common meaning," which may appear in its dictionary definition.  *Id.*  However,

10   "where Congress has used technical words or terms of art, it is proper to explain them by reference

11   to the art or science to which they are appropriate."  *Corning Glass Works v. Brennan*, 417 U.S. 188,

12   201 (1974) (quotation marks and citation omitted).

13        Applying the common meaning of the words used, the phrase "at the point of the sale or

14   transaction" is susceptible to two reasonable interpretations.  One interpretation reads "point" as

15   referring to the "moment"[2] in time *when* a sale occurred.  The other interpretation reads "point" as

16   referring to a particular "location, spot, or position"[3] *where* a sale occurred.  As discussed, both the

17   Seventh and Ninth Circuits have endorsed a construction that reads "point of the sale" as the

18   physical location of the sale.  So have numerous other district courts.  *See Kivo v. Blumberg*

19   *Exelsior, Inc.*, 982 F. Supp. 2d 217, 222 (E.D.N.Y. 2013); *Holt v. LivInn Suites, Inc.*, 2010 WL

20   5834046, at *3 (D.Minn. 2010); *Smith v. Under Armour, Inc.*, 593 F.Supp.2d 1281, 1288 (S.D.Fla.

21   2008); *Narson v. Godaddy.com, Inc.*, 2008 WL 2790211, at *5 (D.Ariz. 2008).  Indeed, Defendant

22   cites no court decisions to the contrary.  This Court finds the reasoning of the Ninth and Seventh

23   Circuits persuasive for two primary reasons.[4]

24   _____

25        [2] *The American Heritage Dictionary of the English Language* 1398 (3rd ed. 1992) ("A
     specific moment in time:  *At this point, we are ready to proceed.*").

26        [3] *Id.*

27        [4] The Court notes that, while the construction of "point of the sale or transaction" provided
     by the majority of courts is persuasive, reliance on the term of art "point of sale" may be
28   problematic.  It is true that "point of sale" refers to the physical point of a sale – such as at a cash

First, the regulatory goal of FACTA – preventing identity theft by reducing the public exposure of private information – supports this reading.  As the Seventh Circuit explained, it is reasonable to read § 1681c(g)(1) as focused only those receipts provided *at* a retail location, because those are the receipts that "may be dropped, mislaid, or discarded by the consumer in any number of public places where it easily can be retrieved and put to nefarious use by others."  615 F.3d at 802-03.  The Court further notes that where physical receipts are provided at a brick and mortar store, there is a risk that someone looking over the customer's shoulder can glean information that might be employed for nefarious purposes.  By contrast, receipts that are delivered to a private residence in a sealed envelope are less likely to be spied upon, retrieved, or "put to nefarious use by others" because they are protected by the courier and obscured by an envelope until secured by the recipient.[5]  Thus, interpreting § 1681c(g)(1) as excluding mailed receipts aligns with the evil that FACTA was intended to address – *i.e.* the proliferation of paper receipts, bearing private information, inattentively transferred in public locations.

Second, a separate provision of FACTA supports this limited construction of § 1681c(g)(1).  As the Seventh Circuit also explained in *Shlahtichman*:

> In subsection 1681c(g)(3), Congress specified two different effective dates for the truncation requirement: December 4, 2006, 'with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is in use before January 1, 2005,' and December 4, 2004 with respect to any such machine or device 'that is first put into use on or after January 1, 2005.' The citation of the cash register as the lead example of a machine or device used to electronically print a receipt is consistent with the notion that Congress meant to regulate the types of receipts that document in-person transactions between the consumer and the merchant; few terms bring to mind a store better than "cash register."

615 F.3d at 800.

---

register.  *See The Dictionary of Retailing*, 171, Fairchild Publications (1985).  However, the *precise* term "point of sale" does not directly appear in the statute.  15 U.S.C. § 1681c(g)(1) (". . . any receipt provided to the cardholder at the point of *the* sale or transaction.").  To be sure, Congress may have intended to employ or refer to that term, but judging by the syntax of the statutory language, it is not clear this is what Congress specifically intended.

[5] While a personal mailbox might be invaded for the purposes of identity theft, this potential threat seems outside the scope of FACTA.  In short, it is hard to imagine that Congress intended to mandate the omission of credit card numbers on receipts that are delivered alongside, and with the same level of security, as credit card statements themselves.

United States District Court

For the Northern District of California

1    Applying this location-based reading of the statute here, Plaintiff's allegations fail to state a

2  claim under § 1681c(g)(1).  Plaintiff alleges that the receipt she received from Defendant was mailed

3  to her after she made her online purchase. Compl. ¶ 9.  Thus, Plaintiff's alleged receipt was not

4  provided to her at the location of her purchase – or "at the point of the sale or transaction" – and is

5  not regulated by FACTA.  Accordingly, the Court **GRANTS** Defendant's motion to dismiss.

6  C.    Willfulness

7    Section 1681n sets forth the liability arising for willful violations of FACTA, including §

8  1681c(g)(1).  Section 1681n provides, in relevant portion:

9          Any person who ***willfully*** fails to comply with any requirement
           imposed under this subchapter with respect to any consumer is liable
10          to that consumer in an amount equal to the sum of –

11          (1) (A) any actual damages sustained by the consumer as a result of
           the failure or damages of not less than $100 and not more than $1,000,
12          whichever is greater; . . .

13          (2) such amount of punitive damages as the court may allow; and

14          (3) in the case of any successful action to enforce any liability under
           this section, the costs of the action together with reasonable attorney's
15          fees as determined by the court . . .

16  15 U.S.C. § 1681n (emphasis added).  This liability provision creates a "willfulness" requirement for

17  all claims for statutory and punitive damages. *Shlahtichman*, 615 F.3d at 803.  This willfulness

18  requirement is not satisfied unless a defendant's violation of a statute was reckless or knowing. *Id.*

19  However, if a defendant that violated FACTA was abiding by its own "objectively reasonable"

20  reading of the statute, then the defendant did not willfully violate it. *See Safeco Ins. Co. of Am. v.*

21  *Burr*, 551 U.S. 47, 69–70 & n. 20 (2007) ("To the extent that they argue that evidence of subjective

22  bad faith can support a willfulness finding even when the company's reading of the statute is

23  objectively reasonable, their argument is unsound.").  A motion to dismiss a claim exclusively

24  seeking punitive or statutory damages under § 1681c(g)(1) of FACTA is properly granted if

25  willfulness is not adequately pleaded, or a defendant's reading of the statute is objectively

26  reasonable. *See Shlahtichman*, 615 F.3d at 803.

27    Here, Plaintiff seeks only statutory and punitive damages.  Hence, to survive a motion to

28  dismiss Plaintiff must show that Defendant's violations of FACTA were willful. *Id.*  Defendant

1   argues that Plaintiff cannot make this showing because it was abiding by its objectively reasonable

2   reading of the statute; that no truncation is required in mailed receipts.  According to Defendant, the

3   Ninth Circuit's endorsement of its reading of FACTA in the dicta of *Simonoff* – as well as a number

4   of other federal courts agreement – indicates the objective reasonableness of its interpretation.

5           Defendant is correct.  As discussed above, numerous federal courts have indicated that

6   Defendant's reading of the statute was not just reasonable, but proper.  *See Simonoff*, 643 F.3d at

7   1210 (9th Cir.2011) ("Point of sale" is a term of art that applies to "face-to-face transactions that

8   take place in a 'bricks-and-mortar' store or some comparable physical location at which the

9   consumer is handed a receipt."); *Shlahtichman*, 615 F.3d at 800 ("This language [of Section

10  1681c(g)(1) ] has a ready application to face-to-face transactions that take place in a

11  'bricks-and-mortar' store or some comparable physical location at which the consumer is handed a

12  receipt."); *Holt*, 2010 WL 5834046, at *3 ("the language 'receipt provided to the cardholder at the

13  point of the sale or transaction,' brings to mind the passing of a paper receipt between buyer and

14  seller at a store location.") (citation omitted); *Under Armour, Inc.*, 593 F.Supp.2d at 1288

15  ("transactions involving paper receipts in 'brick and mortar' establishments must comply with

16  FACTA's mandate."); *Narson*, 2008 WL 2790211, at *5 ("This language clearly contemplates a

17  transaction where the customer is present in the location where the sale is made, and where the

18  merchant provides the receipt to the customer at that location.").  A defendant's reading of the

19  statute that aligns with a substantial body of case law (as here) is objectively reasonable.  *Kivo*, 982

20  F. Supp. 2d at 225 (emphasizing that a defendant's interpretation of FACTA need not be correct to

21  be objectively reasonable).

22          In response, Plaintiff argues that Defendant did not abide by an objectively reasonable

23  reading of FACTA, because it does not properly truncate *any* of its receipts, including those

24  provided to putative class members at the box office.  Thus, according to Plaintiff, Defendant was

25  not abiding FACTA at all, and its willful violation at the box office should be imputed to its postal-

26  based violations as well.

27          Plaintiff's argument is problematic for two reasons.  First, Plaintiff's FACTA claim is

28  predicated on a mailed receipt, not one supplied at the box office.  Absent injury from a cognizable

**United States District Court**
For the Northern District of California

1  claim, Plaintiff has not established she has standing to assert the claim of another party (one who

2  received the physical receipt at the box office).

3       Second, Plaintiff does not cite any authority for the proposition that a defendant's willfulness

4  is imputed from one alleged violation of FACTA to another.  Thus, even if the allegations were

5  sufficient to show that Defendant willfully violated FACTA in other instances (*e.g.* where receipts

6  were provided at the physical point of sale) as to other customers, Plaintiff has not established any

7  legal basis for imputing such willfulness to different conduct directed at this customer which did not

8  violate the statute.  As no class has been certified, the only claim currently before this Court is that

9  of the Plaintiff, and it is Plaintiff's individual claim on which the parameters of willfulness must be

10  measured.

11       Accordingly, Plaintiff has failed to sufficiently allege willfulness on the part of the

12  Defendant.  That failure is an independent and sufficient ground for dismissal of Plaintiff's claim for

13  punitive and statutory damages.  Hence, the Court **GRANTS** Defendant's motion on this ground as

14  well.

15       This order disposes of Docket No. 14.  The Clerk is instructed to enter judgment and close

16  the file.

17

18       IT IS SO ORDERED.

19

20  Dated:  July 9, 2015

21  _____

22  EDWARD M. CHEN
    United States District Judge

23

24

25

26

27

28